Filed 1/27/25  In re T.R. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re T.R. et al., | B333504 |
| Persons Coming Under the Juvenile Court Law. | (Los Angeles County Super. Ct. No. 18LJJP00038) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff, | |
| v. | |
| TIFFANY W., | |
| Defendant and Appellant; | |
| T.R. et al., | |
| Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Stephanie M. Davis, Judge. Affirmed.

Christopher R. Booth, under appointment by the Court of Appeal, for Defendant and Appellant.

Janette Freeman Cochran, under appointment by the Court of Appeal, for Respondents.

_____

In this appeal, Tiffany W. (Mother) challenges the terms of a 2023 final juvenile custody judgment, commonly called an exit order. Dependency proceedings that began in 2018 resulted in the removal of minors T.R. (born 2009) and S.R. (born 2014) from Mother and David R. (Father). The juvenile court terminated jurisdiction in May 2021 by appointing maternal grandmother as the children's legal guardian. In connection with the guardianship, the court granted Father unmonitored visitation and Mother monitored visitation due to her failure to make substantial progress in court-ordered programs including drug abuse treatment. In January 2022, Mother relocated to Alabama; Father remained in Los Angeles County.

The juvenile court reasserted jurisdiction in August 2023 when Father filed a petition pursuant to Welfare and Institutions Code[1] section 388 for a new custody order after maternal grandmother passed away. On September 21, 2023, the court entered an exit order terminating dependency jurisdiction and awarding Father sole legal and physical custody, with Mother having unmonitored virtual visits and monitored in-person visits

_____

[1] Unspecified statutory references are to the Welfare and Institutions Code.

in California.  The court found monitored visitation remained appropriate because of Mother's failure to make substantial progress in court-ordered drug abuse treatment and other programs.

Mother asks us to reverse the exit order, asserting the court abused its discretion in making its custody determinations. The Los Angeles County Department of Children and Family Services (DCFS) has not filed a brief, asserting that it is not a proper respondent.  Father is also not a party to this appeal.  The minor children, however, have responded and dispute Mother's contentions.  We find no abuse of discretion and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

We limit our factual and procedural summary to the portions relevant to Mother's arguments concerning the September 21, 2023 exit order.

### A.    Initial Dependency Proceedings

On January 16, 2018, DCFS filed a petition pursuant to section 300 alleging among other things that Mother's substance abuse and Father's inability to provide ongoing parental care and supervision placed T.R. and S.R. at substantial risk of serious harm.[2]  The juvenile court sustained these allegations, asserted jurisdiction, and removed the children from parental custody. The court ordered unmonitored visitation for Father and monitored visitation for Mother.  Father was ordered to

---

[2] The proceedings also involved two other children of Mother, one an older sibling of T.R. and S.R. and the other a half-sibling born of a different father, who are not the subject of this appeal.  We accordingly do not discuss them.

participate in a parenting program and individual counseling. Mother was ordered to participate in a full drug/alcohol program with aftercare and random testing, a parenting program, and individual counseling.

It appears that during the dependency proceedings visitation by both parents with T.R. and S.R. went well. However, both parents struggled to comply with court-ordered services. Mother was in and out of drug treatment programs, tested positive for alcohol twice and opioids once, failed to appear for multiple drug tests, and admitted to methamphetamine use after DCFS received a referral about it. Father failed to comply with his case plan requirements related to parenting classes and individual counseling. Mother told DCFS she completed individual counseling, but then stated she stopped attending counseling in September 2018.

At a six-month review hearing on August 8, 2018, the court found Mother was in partial compliance and Father in minimal compliance with ordered services. At a 12-month review hearing on May 17, 2019, the court terminated reunification services for Father and continued services for Mother. In June 2019, Mother was arrested for robbery and later pleaded guilty to assault with a deadly weapon. Mother did not inform DCFS or the dependency court of her arrest or conviction; DCFS found out about it from another source. The court terminated Mother's reunification services at the 18-month review hearing on September 19, 2019, after finding her compliance not substantial.

At a section 366.26 hearing on May 10, 2021, the court terminated jurisdiction after maternal grandmother accepted guardianship of the children. The court ordered thrice-weekly

4

monitored visitation with T.R. and S.R. for Mother, and thrice-weekly unmonitored visitation for Father.

## B.    Events Between Dependency Court Proceedings

After the dependency proceedings terminated in May 2021, Mother lived with maternal grandmother for a period of time and helped take care of the children.  In July 2021, the children moved into Father's house and remained residing there.  In January 2022, Mother moved to Alabama.  She remained there at all times relevant to this appeal.

## C.    The Juvenile Court Reasserts Jurisdiction

In May 2023, maternal grandmother passed away after battling cancer for several years.  On June 7, 2023, Father filed a section 388 request to change the governing court order in light of the guardian's death.  Father asserted T.R. and S.R. had been living with him, his partner, and his partner's two children and that the children were thriving.  Father requested the court award him sole legal and physical custody, that the children remain living with him, and that the court provide "no visitation for [M]other until she appears before the court."

Mother told DCFS she was aware T.R. and S.R. were living with Father, and felt they were safe and well cared for.  Mother said she did not speak with T.R. or S.R. very often, and last saw them in person in June 2022.  She stated she was "okay" with Father having primary custody; she asked for visitation in Alabama during summers and holidays, telephone calls, and visitation when she was in Los Angeles County.  Mother expressed concern that Father was hindering the children from contacting her, and that Father would "erase" them from her life.

During Father's DCFS interview he was cooperative and coherent.  Father explained that after maternal grandmother

5

became ill, Father and maternal grandmother arranged for him to provide daily care for the children. Father stated he had worked hard to set his life straight, obtain housing, and prepare to take custody. DCFS observed Father's home, which had five bedrooms, to be clean and tidy with adequate furniture. Father denied he was keeping the children away from Mother. He stated Mother did not call or ask about the children, and that the children had come to accept her lack of interest.

Father's partner provided DCFS with details about the children's medical care and schooling, and stated she and Father had done what they could do on those issues given the limitations posed by not being legal guardians. T.R. was doing well in school. S.R. fell behind academically during the COVID-19 pandemic, and Father and his partner paid for a tutor to help S.R. start reading again at grade level, which he was now doing.

T.R. and S.R. told DCFS that Father and his partner took good care of them. T.R. played on the school volleyball team; S.R. was involved in basketball. Both children wanted to remain living with Father.

After reasserting jurisdiction and making certain interim orders, the court entered an exit order on September 21, 2023, granting Father sole legal and physical custody. The court ordered Mother was to have unmonitored visits by telephone and video a minimum of once per week, and that the children could call Mother as often as they liked. The court limited Mother's in-person visitation to taking place in California with a monitor present. The court based the monitoring requirement on Mother's failure to make substantial progress in drug abuse treatment as well as with previously ordered parenting classes and individual counseling.

6

# DISCUSSION

## A. Applicable Law and Standard of Review

Mother does not dispute the juvenile court appropriately entertained a section 388 petition to modify the guardianship order after maternal grandmother's death. (§ 388, subd. (a)(1).) Mother disputes only the custody determinations made in the resulting exit order. Section 362.4 permits a juvenile court to issue custody and visitation orders when terminating jurisdiction. (*Id.*, subd. (a).) "When making a custody determination in any dependency case, the court's focus and primary consideration must always be the best interests of the child." (*In re Nicholas H.* (2003) 112 Cal.App.4th 251, 268.) "[T]he court is not restrained by 'any preferences or presumptions.' [Citation.] Thus, for example, a finding that neither parent poses any danger to the child does not mean that both are equally entitled to half custody, since joint physical custody may not be in the child's best interests for a variety of reasons." (*Ibid.*)

Custody determinations are "committed to the sound discretion of the juvenile court, and the trial court's ruling should not be disturbed on appeal unless an abuse of discretion is clearly established." (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318.) An abuse of discretion requires that " ' "the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination." ' " (*Ibid.*)

## B. The Court Did Not Abuse its Discretion

### 1. *Sole Legal and Physical Custody Award*

Mother argues the juvenile court abused its discretion in awarding Father sole custody because she "posed insufficient risk

of detriment to justify denial of shared custody." We reject this claim, which suffers from at least two flaws.

First, Mother's argument presumes that shared custody is the preferred outcome unless a parent poses detrimental risk to a child. Such a presumption is "inconsistent with the purpose of juvenile court law." (*In re Chantal S.* (1996) 13 Cal.4th 196, 206.) " '[T]he juvenile court has a special responsibility to the child as *parens patriae* and must look at the totality of the child's circumstances.' This purpose would obviously be frustrated if a juvenile court, on termination of dependency jurisdiction pursuant to section 362.4, were required to presume that joint legal and physical custody was in the best interest of a minor." (*Ibid.*; see also *In re Nicholas H.*, *supra*, 112 Cal.App.4th at p. 268.)

Second, Mother's argument disregards our standard of review. "When the parties present either contradictory evidence or evidence from which different inferences may be drawn, the substantial evidence standard of review requires the reviewing court to resolve all contradictions and draw all inferences in favor of the judgment or order being appealed." (*In re Alexandria P.* (2016) 1 Cal.App.5th 331, 338, fn. 4.) Mother highlights evidence such as her efforts to address her substance abuse problems, that her monitored visits went well, and that T.R. is old enough to call for help if Mother posed any risk when entrusted with the children. But there is also evidence that during the dependency proceedings Mother relapsed on several occasions, committed an assault with a deadly weapon, withheld important information, and got into an argument with maternal grandmother during the period maternal grandmother was taking care of the children sufficiently serious that police were summoned and the juvenile

court required continued monitoring of Mother's visits. Mother asserts her situation improved when she moved to Alabama; the court could discount those claims (including with regard to her sobriety) as uncorroborated.

That the juvenile court could have drawn inferences favorable to Mother from certain evidence does not mean it abused its discretion in drawing adverse inferences based on other evidence. In reviewing a custody decision, "[w]hen two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." (*In re Stephanie M.*, *supra*, 7 Cal.4th at p. 319.) The juvenile court could reasonably conclude on the facts before it that awarding Father sole custody was in the children's best interests. The children were established in Father's home and thriving. Mother relocated to Alabama several years earlier and was not in regular contact with T.R. or S.R.; the court could rationally find Father was thus better positioned to make informed legal custody decisions on the children's behalf. As for physical custody, the children's lives (including their friends, schools, and extracurricular activities) were in California, not Alabama. The children (who were 14 and nine years old at the time of the exit order) wished to remain in California with Father and not relocate for a significant portion of the year to Alabama as a joint physical custody order would have required. The juvenile court therefore did not err in awarding Father sole custody.

2.  *Monitored In-person Visitation*

Mother alternatively argues that the court abused its discretion in continuing the requirement of a monitor for any in-person visits. When ordering visitation, the juvenile court may

9

" 'impose any . . . conditions or requirements to further define the right to visitation in light of the particular circumstances of the case before it.' " (*In re Shawna M.* (1993) 19 Cal.App.4th 1686, 1690, quoting *In re Jennifer G.* (1990) 221 Cal.App.3d 752, 757.) As explained above, there was evidence including Mother's substance abuse and incomplete drug treatment from which the court could reasonably conclude that in-person visits should continue to be monitored. The court accordingly did not abuse its discretion in requiring a monitor for any in-person visits.

## DISPOSITION

The September 21, 2023 judgment is affirmed.

NOT TO BE PUBLISHED

WEINGART, J.

We concur:

ROTHSCHILD, P. J.

M. KIM, J.

10